WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Shannon Marie Lee,<br><br>                          Plaintiff,<br><br>v.<br><br>Carolyn W. Colvin, Acting Commissioner of Social Security,<br><br>                          Defendant. | No. CV-12-00585-TUC-BPV<br><br>**ORDER** |

Plaintiff, Shannon Marie Lee, filed this action for review of the final decision of the Commissioner of Social Security pursuant to 42 U.S.C. §§ 405(g). The United States Magistrate Judge presides over this case pursuant to 28 U.S.C. § 636 (c) and Fed.R.Civ.P. 73, having received the written consent of both parties.

**I.   PROCEDURAL HISTORY**

Plaintiff suffers from affective disorder and anxiety disorder with agoraphobia and elements of obsessive-compulsive disorder. She protectively filed an application for Supplemental Security Income ("SSI") on February 24, 2009, alleging an onset of disability beginning March 1, 2008 due to panic attacks and a fear of public places. (Transcript/Administrative Record ("Tr.") 119-25, 135, 147. The application was denied initially and on reconsideration. Tr. 76-81, 87-90. A hearing before an Administrative Law Judge ("ALJ") was held on October 26, 2010. Tr. 57-75. The ALJ issued a decision on December 20, 2010, finding Plaintiff not disabled within the meaning of the Social

Security Act. Tr. 21-33. This decision became the Commissioner's final decision when the Appeals Council denied review. Tr. 1-3.

Plaintiff then commenced this action for judicial review pursuant to 42 U.S.C. § 405(g). (Doc. 1) For reasons that follow, the Court finds the final decision of the Commissioner is supported by substantial evidence and is free from legal error.

**II.     THE RECORD ON APPEAL**

A.  Plaintiff's Background and Statements in the Record

Plaintiff was 40 years old at the time of the ALJ's decision with a high school equivalency degree and past relevant work as a residential technician for developmentally disabled adults. Tr. 119, 147-48, 151-52.

In March 2009, Plaintiff completed a questionnaire in relation to her Social Security claims. Plaintiff reported sometimes she stays in bed all day, and doesn't do anything except sleep; on other days she eats breakfast, feeds her daughter, gets herself and her daughter dressed, watches television with her daughter, takes a nap, does laundry, cleans the kitchen, takes a shower, and goes to bed. Tr. 138. Plaintiff reported that she went outside once or twice a week and shopped for groceries once a week. When asked whether she drove, Plaintiff said no and explained "I don't have a car." Plaintiff's activities included caring for her young daughter, preparing meals, washing dishes, doing laundry, vacuuming, cleaning the bathroom, doing light yard work, playing cards with her mother, paying bills, using a checkbook, counting change, and shopping. Plaintiff said that she had difficulty concentrating and remembering when anxious, and asserted that she could not finish things that she started, but said that she could pay attention for one hour at a time. Plaintiff stated that she can't go out alone because she has too much anxiety, she starts to panic and feels like she can't breathe or think right. Tr. 138-45.

Plaintiff testified at her hearing before the ALJ on October 26, 2010, that she has difficulty making herself "walk out the door", and that once she did not leave her house for an entire year. Tr. 62-63. When she does go out of the house, her mother helps her out a lot. Tr. 64-65. She tried medication and going to mental health groups, but it didn't

work so she "just stopped going" and was not on medication at the time of the hearing. Tr. 65. She worked in the past, full-time and part-time, assisting people with physical and mental disabilities, however, she took a leave of absence when her son was having a lot of problems in school, and "just never went back." Tr. 67. Plaintiff stated that she doesn't like large groups of people, or putting herself in situations where she has to deal with crowds; when her mother makes her go to the store, she goes just before closing when the store is empty. Tr. 69. Sometimes she has to leave a shopping basket in the store and just go home. Tr. 70. When this happens she starts getting sweaty and dizzy, and can't breathe or focus. Tr. 70.

B. Medical Evidence Before the ALJ

*1) Treating Providers*

Plaintiff was examined and treated by Autumn Holder, N.M.D., PA-C, at Marana Health Center, for complaints of anxiety issues on June 3, 2008. Tr. 199-200. Dr. Holder assessed Plaintiff with anxiety, "either generalized anxiety disorder versus panic disorder with agoraphobia" and prescribed Ativan, twice a day as needed for anxiety, and referred Plaintiff to the behavioral health services program offered through Plaintiff's insurance. Tr. 200.

Plaintiff began receiving psychiatric services at La Frontera Center in June, 2008, and was diagnosed with generalized anxiety. Tr. 289. Her GAF score at this time was 62.[1] Tr. 241, 290. Notes from Plaintiff's psychiatric evaluation at La Frontera on July 21, 2008, indicate Plaintiff's chief complaint as: "My mother says I am an agoraphobic." Tr.

---

[1] GAF Scores range from 1-100. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders*, (4th ed.),("*DSM IV*") at 32. "A GAF score is a rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment." *Vargas v. Lambert*, 159 F.3d 1161, 1164 n. 2 (9th Cir. 1998). In arriving at a GAF Score, the clinician considers psychological, social, and occupational functioning on a hypothetical continuum of mental health illness. *DSM IV* at 34. A GAF score of 61-70 indicates: Some mild symptoms (*e.g.*, depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning (*e.g.*, occasional truancy, or theft within the household), but generally functioning pretty well, with some meaningful interpersonal relationships.

228. Plaintiff was diagnosed with depressive disorder not otherwise specified, and panic disorder without agoraphobia.[2] Tr. 231. Plaintiff was prescribed a trial of Zoloft and trazadone. Tr. 231. Plaintiff reported in October, 2008, that she was doing better on Zoloft, it helped control her mood but at times she felt agitated. Tr. 227. Her provider increased her dosage. Tr. 227. Progress notes on January 6, 2009, indicate Plaintiff failed to show for a provider appointment, Tr. 226, 237, and on February 25, 2009, Plaintiff presented for an appointment 45 minutes late. Tr. 225, 233. Her provider offered to see her on a stand-by basis but Plaintiff opted not to wait, and rescheduled the appointment. Tr. 225, 233. In April, 2009, Plaintiff reported doing well on her medications, with good control of her symptoms, denying depression or anxiety. Tr. 224. Plaintiff's provider recommended a continuation of the same medication. Tr. 224.

On July 6, 2009, having missed her last appointment at La Frontera, resulting in the need to cut her medications in half, Plaintiff reported depression, anxiety and irritability, but was otherwise doing well on her medication, with good control of her symptoms. Tr. 276. She returned to La Frontera for medication re-fills in December 2009 Tr. 327-28. On March 2, 2010, Plaintiff reported that she had stopped taking Zoloft and trazadone two months earlier, because she "felt they stopped working" and reported mood swings with irritability and anxiety. Tr. 329. Plaintiff's provider assessed depressive disorder and panic disorder without agoraphobia and recommended a trial of Risperdal and Klonopin. Tr. 330. Plaintiff did not show for her next scheduled appointment on June 10, 2010, and her file was closed due to lack of contact. Tr. 331, 333.

## 2) *Examining State Agency Physicians*

On May 19, 2009, Hunter Yost, M.D., a state agency psychiatrist, conducted a psychiatric examination of Plaintiff in relation to her claim for Social Security disability

---

[2] Plaintiff's psychiatric provider provided Axis I diagnostic codes "311" and "300.01." Under the *DSM IV*, these codes are used by mental health professionals to describe the features of a given mental disorder, and was referenced by the undersigned to interpret the provider's diagnosis.

- 4 -

benefits. Tr. 246-247. Dr. Yost also reviewed Plaintiff's medical records from La Frontera and Marana Health Center. Tr. 246. Plaintiff said that for the past 10 years she had been very anxious about leaving her house by herself. However, she also said that, with medication, she could go to the store if someone rode in the car with her. Plaintiff's activities included caring for her four-year-old daughter, using a computer and playing computer games, cleaning, reading books, watching movies, doing yard work, driving, and shopping for groceries. On examination, Plaintiff was "mildly anxious" but pleasant and congenial, with a normal (euthymic) mood, good eye contact, coherent speech, good insight and judgment, and no evidence of a thought disorder. Plaintiff scored 26 out of 30 possible points on a Mini Mental Status examination; Dr. Yost noted "minor deficits on cognitive exam, which I would attribute to anxiety." Tr. 246-47. Dr. Yost diagnosed Plaintiff with panic disorder with agoraphobia, and noted minor deficits on cognitive exam which he attributed to anxiety. Tr. 247. Dr. Yost completed a Psychological/Psychiatric Medical Source Statement, concluding that Plaintiff's condition would impose limitations for 12 months. Tr. 248. Dr. Yost further noted no significant limitations in understanding and memory or sustained concentration and persistence, but noted in the category of social interactions "limited only to family members", and under the category of adaptation reported that "[s]he appears to function well within the confines of her own house." Tr. 248. Dr. Yost assigned Plaintiff a GAF score of 51-60 (Tr. 247), indicating moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers). *See* DSM-IV, at 34.

*3) Non-examining State Agency Physicians*

Andres Kerns, Ph.D., reviewed Plaintiff's records and completed a Psychiatric Review Technique form for the period March 1, 2008 to May 29, 2009. Dr. Kerns noted that a RFC assessment was necessary based upon a 12.06 category of Anxiety-Related Disorders. Tr. 251. Specifically, Dr. Kerns noted a medically determinable impairment of

panic disorder with agoraphobia. Tr. 256. Dr. Kerns noted a mild degree of functional limitation in the areas of restrictions of activities of daily living and difficulties in maintaining concentration, persistence or pace; moderate difficulties in maintaining social functioning; and no episodes of decompensation. Tr. 261. Dr. Kerns noted that the evidence did not establish an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. pt. 404, Subpart P, appendix 1. Tr. 262-63.

Dr. Kerns completed a Mental Residual Functional Capacity Assessment, noting no significant limitations with the following exceptions: moderate limitations in the ability to (1) complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; (2) interact appropriately with the general public; (3) accept instructions and respond appropriately to criticism from supervisors; (4) get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and (5) travel in unfamiliar places or use public transportation. Tr. 265-66. Dr. Kerns concluded that Plaintiff is able to meet the basis mental and emotional demands of competitive, remunerative, unskilled work including the abilities (on a sustained basis) to: (1) understand, carry out, and remember simple instructions; (2) make simple work-related decisions; (3) respond appropriately to supervision, co-workers and work situations; and (4) deal with changes in a routine work setting. Tr. 267. Dr. Kerns opined that Plaintiff would do best in work settings requiring minimal social demands. Tr. 267.

State agency psychologist Alan Goldberg, Psy.D., J.D., concurred with Dr. Kerns' opinion. Tr. 299.

*4) The ALJ's Findings*

The ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of February 24, 2009. Tr. 26, ¶ 1. The ALJ found that Plaintiff has multiple severe impairments: affective disorder; and anxiety disorder with agoraphobia

and elements of obsessive-compulsive disorder. Tr. 26, ¶ 2. While those impairments do not meet or equal a listed impairment (Tr. 28, ¶ 3), they do preclude Plaintiff from performing her past relevant work as a residential technician for developmentally disabled adults (Tr. 31-32, ¶ 5). At step five, the ALJ concluded that Plaintiff is not disabled because she has the RFC to perform a full range of work at all exertional levels with the nonexertional limitations that the Plaintiff should only be considered for non-public work. Tr. 29-33, ¶¶ 4, 9, 10.

### *5) Additional Evidence Submitted to the Appeals Council*

After the ALJ's December 2010 decision, Plaintiff submitted additional evidence to the Appeals Council. Tr. 335-84. Some of the additional evidence duplicated evidence that was before the ALJ (Tr. 349-59), or documented the treatment of physical impairments that are not at issue in this appeal (Tr. 380-84). The remaining evidence pertained to Plaintiff's medical treatment after the ALJ's December 2010 decision. Tr. 337-47, 362-79. Despite her allegedly disabling fear of public places, Plaintiff visited a zoo in the spring of 2011. Tr. 362. Plaintiff did not again seek mental health treatment until August 2011. Tr. 337-39. On August 22, 2011, Plaintiff was seen by Thomas Weisman, M.D. for a new patient evaluation. Tr. 337. Plaintiff's chief complaints were hypertension, bipolar disorder, and chronic kidney disease. Tr. 337. Dr. Weisman ordered blood tests, prescribed Lorazepam for anxiety, and referred Plaintiff to COPE for treatment of bipolar disorder and agoraphobia. Tr. 339. The Appeals Council found that the additional evidence did not provide a basis for changing the ALJ's decision. Tr. 1-5.

**III.   DISCUSSION**

A. Argument

Plaintiff contends that the ALJ erred by finding that the Plaintiff had not met the criteria of the listing of impairments in 20 C.F.R. pt. 404, Subpart P, appendix 1, ("Listing of Impairments") for her severe impairments due to her anxiety related disorders (Doc. 17). The Commissioner contends that the ALJ's decision is supported by substantial evidence and is legally sound. (Doc. 18). The Court concludes that the ALJ's

decision is supported by substantial evidence and is free from legal error.

B. Standard of Review

The Court has the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The Commissioner's decision to deny benefits "should be upheld unless it is based on legal error or is not supported by substantial evidence." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). In determining whether the decision is supported by substantial evidence, the Court "must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" *Id*.

Whether a claimant is disabled is determined using a five-step evaluation process. To establish disability, the claimant must show (1) she has not worked since the alleged disability onset date, (2) she has a severe impairment, and (3) her impairment meets or equals a listed impairment or (4) her residual functional capacity (RFC) precludes her from performing her past work. At step five, the Commissioner must show that the claimant is able to perform other work. *See* 20 C.F.R. §§ 416.920(a)-(g).

C. Analysis

At step three of the analysis, if a claimant has an impairment or combination of impairments that meets or equals an impairment found in the Listing of Impairments, then the ALJ must find the claimant disabled. 20 C.F.R. § 416.920(d). For a claimant's impairment to match a listing, it must, for a period of twelve continuous months, "meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see also* 20 C.F.R. § 416.925(d) ("To meet the requirements of a listing, [the claimant] must have a medically determinable impairment(s) that satisfies all of the criteria in the listing."); 20 C.F.R. pt. 404, subpt. P, app. 1 (stating the twelve-month rule). Similarly, for a claimant to show that an impairment is "equivalent" to a listed impairment, she "must present medical findings equal in severity to all the criteria for the

one most similar listed impairment." *Zebley*, 493 U.S. 521, 531 (1990) (citing 20 C.F.R. § 416.926). An ALJ must evaluate the relevant evidence before concluding that a claimant's impairments do not meet or equal a listed impairment, and a boilerplate finding is insufficient to support a conclusion that a claimant's impairment does not do so. *See Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990). The Ninth Circuit has recognized, however, that the ALJ need not recite the reasons for his or her step three determination under the heading "Findings," so long as the evidence is discussed in the ALJ's decision. *Lewis v. Apfel*, 236 F.3d 503, 513 (9th Cir. 2001). An ALJ does not err if he or she, for example, adequately discusses relevant "subjective symptoms, medical and treatment history, impressions and diagnosis from treating and examining physicians, as well as information about [the claimant's] daily activities and living situation." *Harris v. Astrue*, 2009 WL 801347 at *7 (N.D.Cal. Mar.25, 2009). At the same time, where the record contains evidence that both supports and undercuts a finding that an impairment did not meet or equal a listed impairment, the ALJ's failure to address the discrepancy constitutes error. *See Espejo v. Astrue*, 2009 WL 1330799 at *3 (C.D.Cal. May 11, 2009) (remanding the case where the record included conflicting evidence regarding whether the claimant's impairment met Listing 1.04A because the ALJ did not address the issue).

In order to show that her impairment(s) met Listing 12.06, a claimant must meet the specific requirements of the A criteria of the listing and show the required level of severity by establishing the B or C criteria. 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.06. Here, the ALJ reasonably found that Plaintiff did not meet her burden to establish either the B or C criteria, as required to meet the listing.

*1) Paragraph B Criteria*

Plaintiff argues that the ALJ erred in application of the "Paragraph B" criteria, finding Plaintiff only mildly limited in her activities of daily living ("ADL"). Plaintiff asserts that her impairment(s) met Listing 12.06 (anxiety-related disorders). Plaintiff asserts that if the ALJ had properly applied the listings regarding ADL, Plaintiff would have met the listing of impairments by having two "marked" restrictions under

"Paragraph B" for activities of daily living and social functioning, and consequently should have been found entitled to disability.

In order to establish the B criteria for Listing 12.06, a claimant must show two of the following: marked restriction in activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration.420 C.F.R. pt. 404, subpt. P, app. 1, § 12.06. Here, the ALJ found that Plaintiff had mild limitations in activities of daily living; marked limitations in social functioning; mild-to-moderate limitations in concentration, persistence, or pace; and no episodes of decompensation. Tr. 28.

The ALJ concluded that Plaintiff's impairments did not meet or equal any listed impairment, specifically considering the criteria of listings 12.04, Affective disorders and/or 12.06, Anxiety disorders. Tr. 28, ¶ 3. The ALJ explained: "In activities of daily living, the claimant has mild restriction. The claimant reported that she is able to care for her young child. She prepares simple meals, does household chores and yard work, goes shopping, uses a computer, watches television and plays cards. She has a driver's license." Tr. 28. Plaintiff argues that under a proper application of the listings, the Plaintiff meets the criteria for being designated as having "marked" restrictions in the activities of daily living. Plaintiff argues first that Dr. Yost indicated in his report that Plaintiff's Social Interaction is "[l]imited only to immediate family members." (Tr. 248), and regarding Adaptation, Dr. Yost opined that Plaintiff "appears to function well inside the confines of her own house." (Tr. 248). Further, Plaintiff asserts that the Psychiatric Review Technique performed by Dr. Kerns indicates that Plaintiff suffers from the medically determinable impairment of Panic Disorder with Agoraphobia. Tr. 299.

Second, Plaintiff argues that her testimony is consistent with the opinions of Dr. Yost. Plaintiff testified that there was a period of one year that she did not leave her house; that there are occasions she can't make herself walk out the door; that she doesn't like to go out or be around other people; that she has a "thing about germs"; and in public

feels "closed in" and "can't breathe." Tr. 62-64. Plaintiff is able to leave her house only with her mother's help, and has had to leave stores when she feels like there are "too many people." Plaintiff argues that she has severe difficulties meeting the basic maintenance of life including grocery shopping, using public transportation and other activities such as using a post office. When she does attempt these activities, she has "serious difficulty performing them without direct supervision, or in a suitable manner, or on a consistent, useful, routine basis, or without undue interruptions or distractions."

In evaluating the credibility of a claimant's testimony regarding subjective pain or other symptoms, the ALJ is required to engage in a two-step analysis: (1) determine whether the claimant presented objective medical evidence of an impairment that could reasonably be expected to produce some degree of the pain or other symptoms alleged; and, if so with no evidence of malingering, (2) reject the claimant's testimony about the severity of the symptoms only by giving specific, clear, and convincing reasons for the rejection. *See Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).[3] To support a lack of credibility finding, the ALJ is required to point to specific facts in the record that demonstrate that Plaintiff's symptoms are less severe than she claims. *Id*. at 592. "Factors that an ALJ may consider in weighing a claimant's credibility include reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, and unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment." *Orn v. Astrue*, 495 F.3d 625, 636 (9th Cir.2007) (internal quotation marks and citations omitted).

The ALJ found, in the category of ADL's, that Plaintiff had mild restrictions but

---

[3] Contrary to the Commissioner's contention, *Bunnell v. Sullivan*, 947 F.2d 341 (9th Cir. 1991), does not permit finding subjective symptom testimony not credible without articulating clear and convincing reasons. The Commissioner correctly quotes *Bunnell* as stating an ALJ must make specific findings, supported by the record, to support his conclusion that a claimant's allegations of severity are not credible. *See id*. at 345. But *Bunnell* does not address whether the reasons must be clear and convincing. Rather, it addresses whether an ALJ may discredit a claimant's allegations of the severity of pain solely on the ground that the allegations are unsupported by objective medical evidence.

- 11 -

was able to care for her young child, prepare simple meals, do household chores and yard work, go shopping, use a computer, watch television and play cards, and had a driver's license. Tr. 28. The ALJ also found that Plaintiff drives, goes shopping, and talks with her sister daily by telephone, explaining that the physical and mental requirements of these household tasks and social interactions were consistent with a significant degree of overall functioning. Tr. 31.  The Court acknowledges that the mere fact that a claimant engages in daily activities such as grocery shopping and driving a car "does not in any way detract from her credibility as to her overall disability. One does not need to be 'utterly incapacitated' in order to be disabled." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); *see Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987) (a claimant need not "vegetate in a dark room" to be eligible for benefits).  But the ALJ did not rely solely on the Plaintiff's stated ADL's as a basis for finding Plaintiff's testimony not credible. The ALJ conceded that Plaintiff had limitations with working with the general public (*see* Tr. 31), but explained why he found Plaintiff's testimony not to be fully credible regarding the severity of her symptoms. The ALJ stated that there was no documented evidence of treatment at La Frontera or other behavioral health care programs since July 2009. Treatment notes from La Frontera indicated Plaintiff reported doing well on her medications with good control of symptoms while she was being treated. Tr. 30. Additionally, the ALJ noted inconsistencies in the medical record as a whole which cast doubt regarding the credibility of Plaintiff's testimony, specifically that there are numerous references in the medical evidence indicative of the Plaintiff's noncompliance with the medical regimen specified by her health care providers; that she failed to take medication prescribed by her primary care provider and missed numerous appointments at La Frontera; that she had to take smaller dosages than prescribed due to a missed appointment and then reported an increase in symptoms. Tr. 30. Furthermore, at the time of the hearing Plaintiff testified she was not receiving any treatment for her complaints. Tr. 30. Additionally, the ALJ noted that the Plaintiff reported doing well on her medications with good control of

symptoms, and that the evidence did not establish that Plaintiff suffered medication side effects that would interfere with the ability to perform work. Tr. 30. The ALJ found Plaintiff's noncompliance did not support the alleged intensity and duration of her subjective symptoms. Tr. 30.

By citing to the lack of medical evidence, Plaintiff's daily activities, and inconsistencies in her statements, the ALJ provided the requisite specific findings for discounting her testimony concerning the severity of her symptoms. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009). Though Plaintiff's testimony may be susceptible to more than one interpretation, the ALJ's credibility finding is "a reasonable interpretation and is supported by substantial evidence; thus, it is not our role to second-guess it." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir.2001).

The ALJ may properly rely on " 'unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment.' " *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (quoting *Smolen v. Chater*, 80 F.3d 1273, 1284 (1996)); *Fair,* 885 F.2d at 603). According to agency rules, "the individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure." SSR 96–7p. Moreover, a claimant's failure to assert a good reason for not seeking treatment, can cast doubt on the sincerity of the claimant's testimony. *Fair*, 885 F.2d at 603. Here, Plaintiff provides no reason for resisting treatment, and there is no medical evidence that Plaintiff's resistance was attributable to her mental impairment rather than her own personal preference. It was reasonable for the ALJ to conclude that the "claimant's noncompliance does not support the alleged intensity and duration of her subjective complaints." SSR 96–7p.

Finally, the ALJ did not ignore Dr. Yost's findings that Plaintiff's social interactions were limited to immediate family members, or that she had difficulty leaving her home and dealing with crowds, but appropriately took these into account in finding that Plaintiff had marked limitations in appropriate paragraph B criteria of social

functioning. *See* Tr. 28. *Compare* definition of "activities of daily living":

> Activities of daily living include adaptive activities such as cleaning, shopping, cooking, taking public transportation, paying bills, maintaining a residence, caring appropriately for your grooming and hygiene, using telephones and directories, and using a post office. In the context of your overall situation, we assess the quality of these activities by their independence, appropriateness, effectiveness, and sustainability. We will determine the extent to which you are capable of initiating and participating in activities independent of supervision or direction.

20 C.F.R. Pt. 404, app. 1, 12.00, ¶ C.1, *with* definition of "social functioning":

> Social functioning refers to your capacity to interact independently, appropriately, effectively, and on a sustained basis with other individuals. Social functioning includes the ability to get along with others, such as family members, friends, neighbors, grocery clerks, landlords, or bus drivers. You may demonstrate impaired social functioning by, for example, a history of altercations, evictions, firings, fear of strangers, avoidance of interpersonal relationships, or social isolation.

*id.* at ¶ C.2. The ALJ found that the marked limitations in social interactions were "more consistent with the evidence available at the hearing level." Tr. 31. In conclusion, the ALJ's decision that Plaintiff had only mild limitations in her ADL's was supported by substantial evidence in the record consisting of the opinions of Drs. Yost and Kerns, and the ALJ provided clear and convincing reasons to reject the Plaintiff's subjective testimony.

The same conclusion is reached in regards to the ALJ's reliance on Dr. Yost's finding that Plaintiff had "[n]o significant limitations" in "sustained concentration and persistence" (Tr. 248), noting only minor deficits on cognitive exam that he attributed to anxiety. Tr. 247. Dr. Kerns also opined that Plaintiff functioned well overall and had only mild limitations in concentration, persistence, or pace. Tr. 31; *see* Tr. 261, 263.

### 2) Paragraph C Criteria

The C criteria for Listing 12.06 addresses situations where a claimant's home

serves as a highly structured setting that controls or attenuates a claimant's symptoms. 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(F). In order to meet the C criteria, a claimant must show "complete inability to function independently outside the area of one's home." *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.06(C). Here, the ALJ considered the C criteria, but found that Plaintiff was not limited to a highly structured living arrangement (Tr. 28). Hence, the ALJ found that Plaintiff did not meet her burden to show that the C criteria had been met (Tr. 28). The ALJ's finding is supported by evidence that Plaintiff denied depression and anxiety when she complied with her treatment regimen, and that Plaintiff could drive and shop in stores (Tr. 28; *see* Tr. 224, 227, 246, 276, 284). The ALJ's finding is also supported by Dr. Kerns' opinion that Plaintiff's functional limitations were not severe enough to meet the C criteria (Tr. 31; see Tr. 256, 262, 263). *See* 20 C.F.R. § 416.927(e)(2)(i).

The court finds the final decision of the Commissioner is supported by substantial evidence and is free from legal error. Accordingly,

IT IS ORDERED:

1. The Commissioner's decision denying benefits is affirmed.

2. The Clerk of the Court is instructed to enter judgment accordingly and close this case.

Dated this 26th day of July, 2013.

_____
Bernardo P. Velasco
United States Magistrate Judge